61298, 61299. HART v. ELDRIDGE (two cases).

BIRDSONG, Judge.

These appeals arise out of two cases seeking damages for wrongful death and pain and suffering filed by the plaintiff-appellant in the Superior Court of Lowndes County on January 31, 1980. The cases were based on the following chronology of events:

On September 30, 1975, the plaintiff's husband, Mr. William Hart, while an employee of South Georgia Medical Center, Valdosta, Georgia, complained of low back pain and was sent to the hospital emergency room for an examination and x-ray. Subsequent to the x-ray, the defendant-appellee physician, a radiologist, reviewed the x-ray exposures and reported them as normal.

On February 2, 1977, Mr. Hart collapsed while at work and underwent emergency surgery for a ruptured abdominal aortic aneurysm. Two days later, Mr. Hart died as a result of complications from the rupture of the aneurysm. A subsequent re-examination of the x-rays taken of Mr. Hart's low back on September 30, 1975, revealed that the aneurysm was photographically exposed at that time. The appellant alleges that neither she nor her husband was aware of the existence of the aneurysm until Mr. Hart collapsed on February 2, 1977.

On January 31, 1979, appellant filed her complaints alleging negligence in that the appellee failed in September, 1975, to diagnose the aortic aneurysm and alert Mr. Hart to its existence so that he could have sought treatment for the condition and averted the fatal rupture in February, 1977. The appellant filed one lawsuit

individually for the wrongful homicide of her husband and another suit as the administratrix of the estate of William H. Hart for the pain and suffering endured by Mr. Hart as a result of negligent treatment by the defendant-appellee physician.

The trial court granted appellee's motions for summary judgment in both cases on the grounds that both complaints were barred by the statute of limitations set forth in Code Ann. § 3-1102, which became effective July 1, 1976.

These cases were first appealed to the Supreme Court of Georgia and subsequently transferred to this court. The order of that court in each case stated: "Plaintiff appealed to this court on the ground that a constitutional question is involved. Code Ann. Ch. 3-1101 was passed on July 1, 1976. Therefore, it cannot be constitutionally applied retroactively to defeat Mrs. Hart's actions. *St. Joseph's Hospital v. Mattair,* 239 Ga. 674 (238 SE2d 366) (1977). The real questions are when does the time begin to run—from the breach or from the discovery—and what is the applicable statute of limitation, which are not constitutional questions, but are appropriate for decision by the Court of Appeals."

We turn to the questions stated.

On September 30, 1975, the statute of limitations contained in Code Ann. § 3-1004 provided a two-year period of limitation applied to medical malpractice cases as well as other injuries to the person after the right of action accrues. Under this statute, this court held: "The point from which the statute of limitations begins to run under Code § 3-1004 is when the 'right of action accrues,' not when the 'act or omission occurred,' as would be the case under Code § 3-1102." *Simons v. Conn,* 151 Ga. App. 525, 527 (260 SE2d 402), and "when the injury resulting from a tortious act is not immediately apparent the statute of limitation is tolled so long as the victim could not in the exercise of ordinary care have learned of it." *Forgay v. Tucker,* 128 Ga. App. 497, 500 (197 SE2d 492).

On July 1, 1976, Code Ann. § 3-1004.1 became effective providing "the provisions of § 3-1004 shall not apply to actions for medical malpractice as defined in § 3-1101, as now or hereafter amended." Under Code Ann. § 3-1101 ". . . action for medical malpractice means any claim for damages resulting from the death of or injury to any person arising out of (a) health, medical, dental or surgical: (1) service, (2) diagnosis . . . rendered by a person authorized by law to perform such service. . . ."

On the same date, July 1, 1976, Code Ann. § 3-1102 became effective providing "except as otherwise provided in this Chapter, an action for medical malpractice shall be brought within two years after the date on which the negligent or wrongful act or omission

occurred." Thus the legislature has changed the date the time begins to run from the date of discovery to the date of breach.

In order to resolve the dilemma posed by the medical malpractice limitations being applied to alleged medical malpractice actions occurring before July 1, 1977, we need to consider the provisions of Ga. L. 1976, pp. 1363, 1365, effective July 1, 1976 (Code Ann. § 3-1105). That statute provides: "No action for medical malpractice which prior to July 1, 1976, has been barred by the provisions of Title 3, relating to actions, shall be revived by this Chapter. No action for medical malpractice which would be barred before July 1, 1977, by the provisions of this Chapter but which would not be so barred by the provisions of Title 3, in force immediately prior to July 1, 1976, shall be barred [sic] until July 1, 1977."

As we read that statute, the General Assembly created a one-year grace period in which to bring medical malpractice actions. The first sentence merely cautioned that if an action was already barred under the previously existing statute of limitations (two years from the time of the discovery of the right of action), the additional one-year grace period would not revive the extinguished action. The second sentence, however, presents a much more serious problem under the facts of the instant case. That sentence includes the year grace period and provides in effect that if by applying the one (Code Ann. § 3-1103) or two-year (Code Ann. § 3-1102) statute of limitations under Chapter 3-11 (from the time of the discovery of an implement or the occurrence) the action would be barred before July 1, 1977, but would not be barred if the two-year period ran from the discovery of the negligent act as provided by the provisions of Title 3 in effect immediately prior to July 1, 1976 (Code Ann. § 3-1004) was applied, then the provisions of Chapter 3-11 shall be delayed until July 1, 1977.

Applied to the facts of this case, we find the following. The alleged tortious act occurred when the doctor read (or misread) the x-ray in September, 1975. There is no real dispute that the Harts did not know nor would have had any reason to know of the misreading of the x-ray until on or after February 2, 1977. If the provisions of Chapter 3-11 are applied (the statute commenced to run from the date of the occurrence), Mrs. Hart had until September 29, 1977, to file her complaint. Her complaint being filed on January 31, 1979 would be subject to the statute of limitation. If the provisions of Code Ann. § 3-1004 are applied, Mrs. Hart had until February 1, 1979 in which to file her complaint. In its referral of this case to this court the Supreme Court advised this court that Chapter 3-11 constitutionally could not be applied retroactively to defeat Mrs. Hart's actions. Chapter 3-11 became effective July 1, 1976. If its provisions are

applied to Mrs. Hart's actions she would have been required to bring her actions on or before June 30, 1978. This too would have subjected her complaints to defeat by the statute of limitations. This would run afoul of the Supreme Court's admonition.

However, if we bring into play the one-year grace period, this result is obviated. Applying the provisions of Code Ann. § 3-1004, Mrs. Hart's cause of action needed to have life at least through June 30, 1977. Inasmuch as she alleges that she did not become aware of the alleged tort until February 2, 1977, her causes of action would not have been barred until February 1, 1979 because the grace period provided by the provisions of Code Ann. § 3-1105 extended the viability of Code Ann. § 3-1004 until June 30, 1977.

In view of the above analysis, it follows that Mrs. Hart brought her actions for medical malpractice in sufficient time to avoid the application of the statute of limitations. The trial court erred in granting appellee's motions for summary judgment as to both complaints.

*Judgments reversed. Shulman, P. J., concurs. Sognier, J., concurs specially.*

DECIDED JUNE 2, 1981 —
REHEARING DENIED JUNE 18, 1981.

*Sandy Epstein, Warner R. Wilson, Jr.,* for appellant.
*Wade H. Coleman,* for appellee.

SOGNIER, Judge, concurring specially.

I concur in judgment only. The Supreme Court's admonition not to apply Code Ann. § 3-1102 retroactively to defeat Mrs. Hart's action is a statement sufficiently broad to apply to all medical malpractice causes arising out of an act or omission occurring prior to the enactment of Code Ann. § 3-1102, July 1, 1976. Under Code Ann. § 3-1004, the statute of limitation does not begin to run until discovery ". . . when the injury resulting from a tortious act is not immediately apparent . . ." and ". . . the victim could not in the exercise of ordinary care have learned of it . . ." *Forgay v. Tucker,* 128 Ga. App. 497, 500 (197 SE2d 492). The majority opinion indicates that causes arising prior to July 1, 1976 are only viable until June 30, 1979 given the grace period provided for in Code Ann. § 3-1105. Under their interpretation, Code Ann. § 3-1102 would be applied retroactively to incidents occurring prior to July 1, 1976 but not discovered until after June 30, 1977. I disagree.